21914

HERCULES INCORPORATED, Appellant-Respondent, v. The SOUTH CAROLINA TAX COMMISSION, and Robert C. Wasson, Wyatt E. Durham and H. Wayne Unger, Jr., Constituting Said Commission, Respondent-Appellant.

(304 S. E. (2d) 815)

178

*Charles F. Ailstock* and *John P. Linton,* both of *Sinkler, Gibbs & Simons,* Charleston, *for appellant-respondent.*

*Atty. Gen. T. Travis Medlock, Retired Atty. Gen. Daniel R. McLeod, Deputy Atty. Gen. Joe L. Allen, Jr.,* and *Asst. Atty. Gen. Harry T. Cooper, Jr.,* Columbia, *for respondent-appellant.*

June 27, 1983.

*Per Curiam:*

This case is before us upon a Petition for Rehearing. The original Opinion was filed May 3, 1983, and appears as Opinion Number 21914. The Petition for Rehearing is denied. The Opinion, however, is withdrawn and the following substituted therefor.

This action was commenced June 4, 1976, by Appellant-Respondent Hercules, Inc. against Respondent-Appellant South Carolina Tax Commission pursuant to § 12-47-220, *Code of Laws of South Carolina* (1976) as amended, to recover taxes paid under protest. The amount of taxes in controversy was stipulated to be $359,848.38, plus interest of $109,692.71, for a total of $469,541.09. In addition, interest from the date of payment on May 7, 1976, is sought if Hercules prevails.

In 1966, Hercules, Inc. procured its plant facility at Spartanburg for a price of $15,039,331. It depreciated the facility for income tax purposes until it was sold in 1970 for $13,750,000. The contract of sale called for three installment payments in 1972, 1973, and 1974. While it appears that a loss was sustained, in actuality, by reason of $6,200,991 depreciation being recaptured, a taxable gain resulted. Hercules apportioned the gain from the sale of the plant facility among all of the approximately forty states in which it does business and which also require payment of income tax.

Hercules filed its income tax return in South Carolina for the year 1970 in March, 1971. The sale in 1970 of the property was not reflected in this return; no payment was collected in 1970. Hercules had elected, without so indicating to the Tax Commission, to report the sale on the installment plan and to pay its taxes on the profit as collected in the calendar years 1972, 1973 and 1974. The 1972 return reported a gain of $29,900, which represented a portion (about 1½ per cent) of the total taxable gain reported to all states that year (1972). The Tax Commission disallowed this apportionment of gain and assessed additional taxes on the basis of § 12-7-1120(4) of our Code, as amended. It is the contention of the Tax Commission that the entire profit of more than six million dollars should have been reported and paid with the 1970 tax return in March, 1971.

Neither the 1973 nor the 1974 tax installments were paid when due. Before the 1973 return was due (March 15, 1974), the Tax Commission began an audit and discussions had begun relative to whether Hercules was permitted to pay tax on the taxable gains in installments. On May 28, 1974, the Tax Commission, claiming the entire amount due in the year 1970, gave Hercules a notice of its proposed assessment of additional income for 1970. On March 10, 1976, an assessment for the year 1970 was issued. This was, in effect, a demand for payment.

Hercules transacts business nationally and internationally. It is a multistate taxpayer and pursuant to South Carolina statutes, apportions its income for income tax purposes among the states in which it does business. South Carolina Code § 12-7-1140 *et seq.* provides a three-factor formula which consists of an apportionment percentage equal to the average of sales, payroll, and property ratios. These ratios and their definitions are found in § 12-7-1150 to § 12-7-1170 of the Code. The trial court found that for the years in which Hercules operated the Spartanburg facility, 1.5 per cent of its income was apportioned to South Carolina. Based on the statutory formula (from 1966 to 1970), Hercules deducted a total of $111,115 from its income apportioned to South Carolina as a result of depreciation claimed for the operation of the Spartanburg facility. The remaining approximately 98.5 per cent of the depreciation claimed during those years was deducted

from income apportioned to states other than South Carolina. This method of reporting resulted in a greater income tax payment to South Carolina each year.

When the plant was sold in 1970, the adjusted tax basis for federal tax purposes was approximately $7,550,000. Therefore, the 1970 sale resulted in a federally taxable gain of approximately $6,200,000. Hercules did not report any gain on its 1970 federal tax return as it did not receive any payment in the year of sale. Hercules reported a taxable gain for federal tax purposes on its federal tax returns for the years 1972, 1973 and 1974. A Hercules tax official testified that the Internal Revenue Service accepted Hercules reporting the payment as being taxable in the year of receipt pursuant to the installment sales provision of the Internal Revenue Code, Section 453. All other states in which Hercules did business accepted the 1970 sale as being properly treated as an installment sale and income taxable in years 1972, 1973 and 1974.

The trial court found there were two issues to be decided: (1) Did the Tax Commission err in refusing to treat the 1970 sale as an installment sale and by refusing to allow payments in 1972, 1973 and 1974? (2) How much of the taxable gain for the 1970 sale is reportable and taxable as South Carolina income?

On the first issue, the trial court held that Hercules was not required to report the sale on its 1970 return and properly elected to treat the sale as an installment sale by reporting a portion of the income ($29,900) on its corporate income tax return for the year 1972. This conclusion was reached by relying on the holding in *Hay v. S. C. Tax Commission*, 273 S. C. 269, 255 S. E. (2d) 837 (1979). We think this case is controlling and, accordingly, agree with the trial judge in ruling with Hercules on the first issue stated above.

The trial court proceeded to determine the amount of taxes due based upon a formula suggested by Mr. Brooks, a representative of the Tax Commission, as being a "... fair and more equitable method." The court proceeded to determine that "... the assessment by the Tax Commission should have been based on the computation testified to by Mr. Brooks concerning the worldwide activities of Hercules." This resulted in a refund of a substantial portion, but not all, of the amount claimed by Hercules.

The theory upon which the trial judge decided the case was

not suggested by any pleading. No authority for the ruling has been cited. The theory upon which the court compromised the issue giving to Hercules less than its demand and allowing the Tax Commission less than it requested was based upon views conceived by Mr. Brooks and adopted by the judge as being equitable, but which have no basis in the law.

The ruling of the trial court makes it clear that Hercules owed taxes for the years 1972, 1973 and 1974. We agree. Hercules has paid for the year 1972, and was obviously ready to pay for years 1973 and 1974, but refrained from so doing because the Tax Commission took the position that such was not proper. It now becomes our duty to determine the amount of taxes due.

It was the contention of the Tax Commission that § 12-7-1120(5) of the 1976 Code, currently § 12-7-1120(4) of the Cumulative Supplement, is specifically on point and should control. This section provides that the gain or loss from sales of real estate located in South Carolina shall be allocated to this state and such income shall not be considered as income which can be apportioned.

Hercules contended that § 12-7-250 controls. It requires that a determination of the amount of tax due from a multi-state taxpayer be made "... upon a base which reasonably represents a portion of the trade or business carried on within the state." The Tax Commission contends that the sale of the plant was a transaction wholly within this state and thus is not subject to § 12-7-250. The argument overlooks the fact that the Tax Commission allowed Hercules from 1966 to 1970 to apportion depreciation of the plant for income tax purposes throughout the many states in which it does business. This caused South Carolina to receive greater income tax revenues from Hercules during this period of time than would have been received had all the depreciation been allocated to South Carolina. Further, other states having allowed Hercules a tax deduction for this apportioned depreciation, are entitled to recapture this depreciation upon the sale of the plant.

If we were to hold that § 12-7-1120(4) allows South Carolina the sole benefit of recapturing all of the depreciation taken, one of two gross inequities would result. Either all other states which allowed depreciation would be denied the right to recapture or Hercules would be subjected to double taxation.

It cannot be seriously argued that the legislature intended such a result.

We, therefore, hold that the gain which is allocable to South Carolina under § 12-7-1120(4) is gain represented by a true and actual profit as contrasted with a profit brought into being by reason of recapturing depreciation. In addition, the gain would, of course, include the recapture of depreciation actually allocated to South Carolina.

The gravamen of our holding is that Hercules should have been permitted to pay on the taxable gain in three installments during the years of collection — 1972, 1973 and 1974. It follows that Hercules must now pay the 1973 and 1974 installments. The amounts, if not agreed upon, shall be submitted to, argued before and determined by the Circuit Court on remand. After deducting the amount owed by Hercules for these two years' installments, the remainder of the amount paid under protest plus interest shall be refunded by the Tax Commission.

The trial judge held that Hercules was entitled to interest in the amount of six per cent from date of payment to July 5, 1979, and further held that Hercules was entitled to collect interest at the rate of 8.75 per cent from July 5, 1979, until paid. On July 5, 1979, the statutory law of this state was amended such as to increase the rate of interest collectible on judgments, etc. We are of the opinion that the judge erred and that the amended statute does not control interest payments on taxes paid under protest. Section 12-7-2310 specifically deals with and controls the payment of interest involved here.

We agree with the lower court that the law of estoppel is not available to either party to this proceeding.

In light of our ruling, the double taxation argument as violative of the due process and equal protection provisions of the constitution is mooted.

The issues on remand shall be settled in keeping with views herein expressed.

Affirmed in part; reversed in part; and remanded.